**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gerald D. BROWN, Defendant and Appellant.**

Crim. No. 870242.

Supreme Court of North Dakota.

March 4, 1988.

Patricia L. Burke, State's Atty. for Burleigh County, Bismarck, for plaintiff and appellee.

Benjamin C. Pulkrabek, of Pulkrabek & Tuntland, Mandan, for defendant and appellant.

VANDE WALLE, Justice.

Gerald D. Brown appealed from a judgment of conviction entered upon a jury verdict finding him guilty of the crime of gross sexual imposition, in violation of Section 12.1–20–03(2)(a), N.D.C.C. We affirm.

In March of 1986 Brown was staying at a motel in Bismarck, North Dakota, while recuperating from a broken-back injury suffered the year before. During this time Brown's former wife ran errands for him and brought three of their children (two boys and one girl) to see Brown. On those occasions when the children spent the night

with Brown, the two older boys (both teen-agers) slept in one of the two beds in the room, while Brown's seven-year-old daughter slept with Brown in the second bed.

At trial, the daughter, Cheryl (a pseudonym), testified about the events of one of those evenings. Cheryl stated that after her two brothers had fallen asleep on one bed she prepared to sleep with her father in the second bed. She did this by going into the bathroom and changing into pajamas which she wore over a pair of panties. Cheryl then got into bed with Brown. She testified that Brown then patted and poked at her "private area," and that he threatened to hurt her mom if she told about the incident. Brown denied that this incident took place. Subsequently, the jury found Brown guilty of the crime of gross sexual imposition. Brown has appealed from that conviction.

## I

■ Brown, via new counsel on appeal, first argues that under the evidence it was not possible to find him guilty of gross sexual imposition in violation of Section 12.1–20–03(2)(a), N.D.C.C. Brown contends that because there was no contact with Cheryl's flesh because of the pajamas and panties covering her "private area," he could not be found guilty of this crime.

The crime of gross sexual imposition under Section 12.1–20–03(2)(a) is defined as follows:

"A person who engages in sexual contact with another, or who causes another to engage in sexual contact, is guilty of an offense if:

"a. The victim is less than fifteen years old; ..."

Under our statutes "sexual contact" is defined to mean

"any *touching* of the sexual or other intimate parts of the person for the purpose of arousing or satisfying sexual or aggressive desires." [Emphasis added.] Sec. 12.1–20–02(4), N.D.C.C.

The words in our statutes are to be understood in their ordinary sense. Sec. 1–02–02, N.D.C.C. The word "touch" is defined to mean "perceive by the sense of feeling."

*Webster's New World Dictionary*, 2d College Ed. (1980). It would be an absurd result, in contravention to Section 1–02–38(3), N.D.C.C., to determine that a person cannot perceive by the sense of feeling the "sexual or other intimate parts" of a person because clothing was interposed between such a bodily part and the offender. As one court has stated, "It is a matter of the commonest knowledge that the interposition of a layer of fabric between a person's hand and an object upon which the hand is placed will not prevent that person from feeling the object thus concealed." *Resnick v. State*, 574 S.W.2d 558, 560 (Tex. Crim.App.1978).

A review of the legislative history of Section 12.1–20–02(4) indicates that our Legislature intended no such absurd result. As we have previously stated:

"Our Criminal Code is modeled on the proposed Federal Criminal Code. Report of the North Dakota Legislative Council (1973) at 81. The Federal Code, in turn, relies heavily on the Model Penal Code. References to both codes are made when appropriate." *State v. Trieb*, 315 N.W. 2d 649, 657, fn. 9 (N.D.1982).

Section 1647 of the proposed Federal Criminal Code defines the crime of sexual assault by prohibiting "sexual contact" with another under various situations. Section 1649 of the proposed Federal Criminal Code defines "sexual contact"—in a manner quite similar to our statutory definition—to mean "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire." The crime of sexual assault in the proposed Federal Criminal Code is virtually identical to the crime of sexual assault defined at § 213.4 of the Model Penal Code, and the definition of "sexual contact" in both is identical. (The Model Penal Code's definition of "sexual contact" is contained within § 213.4.) The commentary to the Model Penal Code states:

"Section 213.4 requires an actual touching of the 'sexual or other intimate parts of the person.' ... Such touching need not involve naked contact between the actor's hand and another's sexual or

intimate parts, but may be accomplished through the clothing." [Footnotes omitted.] *Model Penal Code and Commentaries*, Vol. I, pt. II, Commentary to § 213.4 (1980).

Thus it is clear that "sexual contact" occurs even though clothing is interposed between the "sexual or other intimate part" and the offender. In arguing that "sexual contact" required contact with the victim's flesh, Brown cited the case of *State v. Rodgers*, 718 P.2d 275 (Hawaii 1985). *Rodgers* concluded that "sexual contact," which was defined as "any touching of the sexual or other intimate parts of a person" [H.R.S. § 707-700(9)] could not take place when there was clothing covering such a part of the victim. We note that this is a minority position. The great weight of authority holds that "sexual contact" occurs when a defendant touches a victim even though clothing covered a sexual or intimate part of the victim. See, e.g., *Guia v. State*, 723 S.W.2d 763 (Tex.App.Dallas 1986); *State v. Schnaidt*, 410 N.W.2d 539 (S.D.1987); *State v. Samson*, 388 A.2d 60 (Maine 1978); *People v. Keesee*, 47 Ill.App. 3d 643, 7 Ill.Dec. 768, 365 N.E.2d 53 (1977); *Summers v. Sheriff, Clark County*, 90 Nev. 180, 521 P.2d 1228 (1974). The decision in *Rodgers* may be partially explained by reference to the provisions of Hawaii's statutes defining sexual conduct for purposes of regulating obscenity [H.R.S. § 712-1210(8)] to include physical contact with a person's clothed or unclothed genitals. The Hawaii statute defining sexual contact omitted that provision and the Hawaii courts deemed that omission significant to show that a different legislative intention existed. Although Brown argues that a similar difference in intent can be gleaned by examining the sexual conduct definition in the North Dakota obscenity statute [Section 12.1-27.1-01(10)], the statutes are so dissimilar that we discern no such different intent. Therefore, Brown's claim that he could not be found guilty of the crime of gross sexual imposition must fail.

## II

Brown's next issues concern two events occurring during the trial. He argues that the trial court erred in failing to admonish the jury prior to a brief recess in the trial that it should not discuss the case, as required by Section 29-21-28, N.D.C.C., and that the trial court erred in reading the information to the jury rather than having the clerk or the State's Attorney read the information, as provided for by Section 29-21-01(1). However, neither of these issues was raised in the trial court.

In order that this court may consider an issue it must have been raised in the trial court. The rule, as we have previously stated it, is:

"When irregularities occur in a trial court, the party affected must bring the problem to the court's attention when the irregularities occur so that the court may take appropriate remedial action. *State v. Abrahamson*, 328 N.W.2d 213 (N.D. 1982). An issue or contention not raised or considered in the trial court cannot be raised for the first time on appeal." *State v. Ronngren*, 361 N.W.2d 224, 231 (N.D.1985).

*See also State v. Reil*, 409 N.W.2d 99 (N.D. 1987) [determining that a contention that the trial court erred, because jurors were not sworn until after preliminary instructions and opening statements had been given, was not properly before the court because it had not been brought to the trial court's attention]. Therefore, we cannot consider either of these issues because Brown failed to bring them to the attention of the trial court.

## III

Finally, Brown contends that he was denied effective assistance of counsel at trial. We recently set forth procedures for the presentation of ineffective-assistance-of-counsel claims, noting that generally such claims are most effectively presented in post-conviction-relief proceedings before the trial court. *State v. Ricehill*, 415 N.W. 2d 481 (N.D.1987). See also *State v. Denney*, 417 N.W.2d 181 (N.D.1987). Because we cannot conclude from reviewing the record that Brown's trial counsel was constitutionally ineffective, and because we

otherwise affirm, we "do so without prejudice to [Brown's] right to raise the ineffective-assistance-of counsel issue via appropriate post-conviction proceedings." *Ricehill,* 415 N.W.2d at 485.

The judgment is affirmed.

ERICKSTAD, C.J., LEVINE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.